UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-62239-KMM

MICHAEL BEATTIE,

    Plaintiff,
v.

HOLMAN AUTOMOTIVE, INC.,

    Defendant.
_____/

**ORDER**

THIS CAUSE came before the Court upon Defendant Holman Automotive Inc.'s ("Defendant") Motion for Summary Judgment. ("Mot.") (ECF No. 20). Plaintiff Michael Beattie ("Plaintiff") filed a response in opposition. ("Resp.") (ECF No. 26). Defendant filed a reply. ("Reply") (ECF No. 29). The Motion is now ripe for review.

**I.    BACKGROUND**[1]

In 2011, Defendant hired Plaintiff, an Asian male, to work as a management trainee. D's 56.1 ¶¶ 2–4. After working in several positions and being promoted to sales manager, Plaintiff

---

[1] The undisputed facts are taken from Defendant's Statement of Material Facts in Support of its Motion for Summary Judgment ("D's 56.1") (ECF No. 21) and Plaintiff's Response to Defendant's Statement of Material Facts ("P's Resp. 56.1") (ECF No. 26). At the outset, the Court observes that several of Plaintiff's responses are improper. For example, in several instances where Plaintiff disputes a material fact, Plaintiff provides no citation to record evidence demonstrating the existence of a dispute, *see* P's Resp. 56.1 ¶¶ 1, 3, 15, 18, 29, 41, 42, in violation of the Federal Rules. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Further, Plaintiff "disputes" several material facts by stating that he "lack[s] knowledge" of the material fact, or that he lacked knowledge of the material fact at the time it occurred and only found out about it at his termination, *See e.g.*, P's Resp. 56.1 ¶¶ 1, 6, 9, 10, 14, 25, 30, 31, 33. Again, Plaintiff fails to cite to the record and/or show that the fact is "genuinely in dispute," in violation of the Federal Rules. Accordingly, the Court considers these facts undisputed for purposes of this Motion. Fed. R. Civ. P. 56(e)(2).

was transferred Defendant's Infiniti dealership. *Id*. ¶ 15.

In April 2020, Defendant temporarily closed its sales operations and furloughed all sales and finance employees, including Plaintiff. *Id*. ¶ 16. In May 2020, the Infiniti dealership closed and Plaintiff was offered a Finance Consultant position at BMW of Fort Lauderdale, which he accepted. *Id*. ¶¶ 19, 22. In this role, Plaintiff reported to Keith Cordeiro, Assistant General Manager, and Jeff Duecker, General Manager. *Id*. ¶ 23.

Throughout his tenure working for Defendant, several complaints were made about Plaintiff. For example, in August 2013, a sales manager accused Plaintiff of physically threatening him and calling him a "F---ing Moron" and "F---ing F-g." *Id*. ¶ 6. In or around 2017, a potential customer wrote a written complaint "regarding a terrible experience he and his wife had with a sales representative, and that the manager--[Plaintiff]--then followed them out when they left the dealership, cursing and using racial profanities toward them." *Id*. ¶ 13. In 2018, a salesperson complained that Plaintiff had raised his voice and yelled at her. *Id*. ¶ 14. In 2020, a finance consultant made a written complaint about Plaintiff's aggressive conduct towards her. *Id*. ¶ 25. In 2021, a customer complained that Plaintiff had been arrogant, rude, disrespectful, and unprofessional. *Id*. ¶ 30.

Plaintiff's supervisors, Cordeiro and Duecker, recommended that Plaintiff's employment be terminated. *Id*. ¶ 34. On February 10, 2021, Cordeiro and Jane Garofalo, the Human Resources Business Partner, met with Plaintiff to advise him of his termination. *Id*. ¶ 36. At that time, Plaintiff, for the first time, raised claims that "he had been discriminated against because he is Asian; that he had filed a complaint about a racial slur by the Assistant General Manager, John Jones, when he worked back at Audi back in 2016; and that he was being retaliated against." *Id*.

Thereafter, Defendant placed a hold on the termination decision so that Garofalo could

investigate Plaintiff's claims. *Id*. ¶ 38. At the end of her investigation, Garofalo wrote a summary of her findings and conclusions. *Id*. ¶ 40. She found no evidence of discrimination, harassment or other basis for changing the termination decision. *Id*. On February 17, 2021, Plaintiff's employment was terminated. *Id*. ¶ 43.

## II.  PROCEDURAL HISTORY

On November 30, 2022, Plaintiff commenced this action. *See* (ECF No. 1). Plaintiff filed an eight count Complaint alleging: (1) discrimination based on race and national origin pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) hostile work environment in violation of Title VII; (3) retaliation in violation of Title VII; (4) discrimination based on race and national origin in violation of the Florida Civil Rights Act ("FCRA"); (5) hostile work environment in violation of the FCRA; and (6) retaliation in violation of the FCRA. *See generally* Compl. Now, Defendant argues that each count of the Complaint fails as a matter of law. *See generally* Mot.

## III.  LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## IV.  DISCUSSION

Plaintiff argues he suffered race and national origin discrimination, that he faced a hostile work environment, and that he was retaliated against. *See generally* Compl. Defendant contests each of Plaintiff's assertions. *See generally* Mot. The Court analyzes each allegation in turn.

As an initial matter, this Court assesses Plaintiff's FCRA claims under the same framework as claims arising under Title VII. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under the [FCRA].")

### A.  Discrimination

Defendant seeks summary judgment on Plaintiff's discrimination claims on the grounds that Plaintiff cannot demonstrate a prima facie case of discrimination. Mot. at 10–13. Specifically,

Defendant urges the Court to hold, as a matter of law, that Plaintiff fails to show (1) that he belongs to a protected class for his national origin discrimination claims, and (2) that Defendant treated any similarly situated non-Asian employees more favorably. *Id*. As discussed below, the Court agrees with Defendant.

"A plaintiff may establish a Title VII claim by presenting direct evidence of discrimination, or circumstantial evidence that creates an inference of discrimination." *Tseng v. Fla. A & M Univ.*, 380 Fed. Appx. 908, 909 (11th Cir. 2010). Where, as here, an employee bases his discrimination claim on circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *Giles*, 542 Fed. Appx. at 872. Under this framework, an employee must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case, the burden is on the plaintiff to show: (1) he belongs to a protected class; (2) he is qualified to perform the job; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the employee's protected class more favorably. *Id*.

If the plaintiff meets its burden, the burden then shifts to the employer to show legitimate, nondiscriminatory reasons for the adverse employment action. *Id*. If the employer meets this burden, the burden then shifts back to the plaintiff to present "significantly probative evidence showing that the asserted [nondiscriminatory] reason is merely a pretext for discrimination." *Underwood v. Perry Cnty Comm'n*, 431 F.3d 788, 794 (11th Cir. 2005).

As an initial matter, Plaintiff fails to make a prima facie case of national origin discrimination because he does not establish that he belongs to a protected class. The term national origin refers to the country where a person was born, or to the country from which his ancestors came. *Jiann Min Chang v. Ala. Agric. & Mech. Univ.*, 355 F. App'x 250, 251–52 (11th Cir. 2009)

(citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973)).  Here, Plaintiff rather confusingly disputes that he is Korean.  *See* P's Resp. 56.1 ¶ 4 (in response to Defendant's statement of material fact that Plaintiff's national origin is Korean, Plaintiff responds "Disputed.  This is a legal conclusion as to what constitutes race and national origin under the law.  Plaintiff identifies as an Asian male.").  In addition, nowhere in his statement of material facts does Plaintiff allege his national origin.  Accordingly, Plaintiff fails to establish that he belongs to a protected class, and his claims for national origin discrimination must fail.

Even if Plaintiff properly alleged that he was a member of a protected class, his claims for discrimination would nonetheless fail because Plaintiff fails to show that Defendant treated similarly situated non-Asian[2] employees more favorably.  *See Lewis v. City of Union City*, 918 F.3d 1213, 1227 (11th Cir. 2019).  To show that another employee is "similarly situated" such that the employee qualifies as a comparator, Plaintiff would have to show that the employee and Plaintiff are "similarly situated in all material respects."  *Id*. at 1226.

Ordinarily, a similarly situated comparator: (1) "will have engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "will have been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) will generally "have been under the jurisdiction of the same supervisor as the plaintiff"; and (4) "will share the plaintiff's employment or disciplinary history."  *Id*. at 1227–28.  "In short, as its label indicates – 'all material respects' – a valid comparison will turn not on formal labels, but rather on substantive likenesses."  *Id*. at 1228.

Here, Plaintiff has not even attempted to name any potential comparators.  Plaintiff wholly fails to address Defendant's argument that Plaintiff failed to identify similarly situated comparators.  *See generally* Resp.  In fact, the word "comparator" does not even appear in

---

[2] Or a similarly situated individual whose national origin is different than Plaintiff's.

6

Plaintiff's Response. *Id*. Taking the record as a whole, no rational trier of fact could find for Plaintiff given the complete lack of evidence supporting his contentions or refuting Defendant's arguments. The Court agrees with Defendant that Plaintiff failed to make a prima facie showing of discrimination.

A plaintiff "can also survive summary judgment by presenting a convincing mosaic of circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *McPhie v. Yeager*, 819 Fed. Appx. 696, 699 (11th Cir. 2020) (citing *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012)). A plaintiff may use non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination to create a triable issue. *Id*.

In his response, Plaintiff "contends that if he presents a sufficient 'mosaic of circumstantial evidence,' he does not need to refute Defendant's reason for termination and demonstrate pretext as the two are different methods for Plaintiff to prove[] his case." Resp. at 8. Yet Plaintiff fails to point to a single piece of evidence in the record demonstrating any evidence of discrimination, let alone a "mosaic" of circumstantial evidence. *Id*. at 8–9. Plaintiff's bare assertions, with no citation to the record, are wholly insufficient to raise a reasonable inference of intentional discrimination.

Even if Plaintiff was able to make a prima facie case of discrimination, his claims would nonetheless fail. Defendant has articulated a legitimate non-discriminatory reason for terminating and Plaintiff fails to demonstrate that those reasons are pretext.

Defendant states that it terminated Plaintiff based on his "reported and repeated unprofessional, hostile conduct toward customer[s], co-workers and managers." Mot. at 12. For example, in August 2013, a sales manager accused Plaintiff of physically threatening him and calling him a "F---ing Moron" and "F---ing F-g." *Id*. ¶ 6. In or around 2017, a potential customer

wrote a written complaint "regarding a terrible experience he and his wife had with a sales representative, and that the manager--[Plaintiff]--then followed them out when they left the dealership, cursing and using racial profanities toward them." *Id*. ¶ 13. In 2018, a salesperson complained that Plaintiff had raised his voice and yelled at her. *Id*. ¶ 14. In 2020, a finance consultant made a written complaint about Plaintiff's aggressive conduct towards her. *Id*. ¶ 25. In 2021, a customer complained that Plaintiff had been arrogant, rude, disrespectful, and unprofessional. *Id*. ¶ 30.

Because Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff, the burden shifts to Plaintiff to prove that the stated reasons are pretextual. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012). Here, Plaintiff, again without citation to any specific evidence "asserts that his deposition testimony taken in its entirety, together with his declaration, demonstrate that . . . Plaintiff has shown the requisite discriminatory conduct and that Defendant had no legitimate basis upon which to terminate him." Resp. at 9. Plaintiff adds that the investigation "is replete with information as evidenced by the contradictions in Garafalo's deposition testimony identifying numerous investigatory functions in which she did not engage." *Id*. Yet Plaintiff fails to identify any contradiction. In sum, Plaintiff identifies no evidence demonstrating how either of the Defendant's reasons for the adverse employment decisions were actually motivated by discriminatory intent. Thus, the Court disagrees that Defendant's legitimate business purposes are patently pretextual on their face.

Accordingly, Plaintiff's discrimination claims fail as a matter of law and summary judgment in favor of Defendants on these claims is proper.

B. *Hostile Work Environment*

Next, Defendant seeks summary judgment on Counts III and VII on the grounds that

Plaintiff cannot demonstrate a hostile work environment. Mot. at 14–17.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To state a claim for hostile work environment under Title VII and the FCRA, a plaintiff must allege that he belongs to a protected group; that he has been subject to unwelcome harassment; that the harassment must have been based on a protected characteristic of the employee, such as national origin; that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and that the employer is responsible for such environment under either a theory of vicarious or direct liability. *See Thompson v. City of Miami Beach*, 990 F. Supp. 2d 1335, 1339 (S.D. Fla. 2014) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment requires proving a subjective and an objective component. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). In other words, "[t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id*. (internal quotation marks omitted). In particular, the work environment must be such that a reasonable person would find it to be hostile and abusive, and the victim of the harassment must subjectively perceive the environment to be abusive. *Id*. Furthermore, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id*. (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)).

The Eleventh Circuit has identified the following four factors to be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997).

Defendant avers that any alleged conduct was not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. Mot. at 14–17. Plaintiff responds, without specifically citing to evidence in the record, that "in his Declaration . . . he demonstrates that he is able to meet the burden required to sustain a hostile work environment claim." Resp. at 10. Turning to his Declaration, the Court notes three instances that could be the basis for a hostile work environment claim: (1) in or around 2016, Gene Welsh and John Jones "made derogatory comments towards Asians in [Plaintiff's] presence . . . including but not limited to offensive comments concerning Pearl Harbor, the Vietnam War, Communist China, [and] Asian customers being cheap and unpleasant to work with, etc."; (2) "Gene Walsh on two separate occasions . . . made racist comments about Asians"; (3) in March 2020, "negative comments towards Asians concerning the origin of [Covid-19] became rampant throughout the company." Beattie Decl. ¶¶ 6, 10, 18.

The Court agrees with Defendant that these instances are not sufficiently severe or pervasive to have altered the terms and conditions of Plaintiff's employment and created a discriminatorily abusive working environment. First, Plaintiff fails to provide sufficient detail as to the time period during which this conduct occurred and how frequently these comments were made. *See e.g.*, *Guthrie v. Waffle House*, 460 F. App'x 803, 807 (11th Cir. 2012) (finding that "a few dozen comments or actions . . . spread out over a period of eleven months" was insufficiently

frequent); *Mitchell v. Pope*, 189 F. App'x 911, 913 (11th Cir. 2006) (finding that "16 specific instances of offensive conduct" over four years was insufficiently frequent). Here, Plaintiff identifies less than ten specific comments made over the course of the five years where such comments were made. To the extent Plaintiff alleges "rampant" comments, Plaintiff's bare assertions, without more, are insufficient to create a triable issue of fact.

Even assuming that these comments were made more frequently than the record suggests, this conduct, as a whole, is not severe. Plaintiff does not allege that those comments (1) were directed at him, (2) unreasonably interfered with his work performance, or (3) contained threats of physical violence. *Godoy v. Habersham Cnty.*, 211 F. App'x 850, 854 (11th Cir. 2006) (granting summary judgment on a hostile work environment claim where the plaintiff "did not present evidence indicating the frequency or pervasiveness of the derogatory comments he alleged were aimed at him, nor did he provide evidence the comments unreasonably interfered with his job performance"). Plaintiff has also not demonstrated that the comments were not mere epithets and, generally, the "'mere utterance of an epithet which engenders offensive feelings in a [sic] employee . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21, (alteration accepted).

In sum, Plaintiff has not met his burden of establishing that the comments did not amount to simple teasing, offhand comments, or isolated incidents, but rather constituted repeated and intentional discrimination. Without more, Plaintiff's hostile work environment claims and factual allegations, or lack thereof, are insufficient to survive summary judgment.

C. Retaliation

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation pursuant to Title VII and the FCRA because Plaintiff fails to establish a causal connection between any

protected activity and his termination.

To establish a *prima facie* claim of retaliation pursuant to Title VII or the FCRA, a plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered adverse employment action; and (3) there is a causal connection between the protected activity and adverse action. *Harper*, 139 F.3d at 1388. Plaintiff must show proof that the unlawful retaliation would not have occurred but for the alleged wrongful action of the employer. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

To demonstrate causation, Plaintiff relies solely on the alleged close temporal proximity between complaints that he made, on an unspecified date, and his termination. Resp. at 11. "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *Jones v. Gulf Coast Health Care of Del.*, *LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017). The inference of causation from close temporal proximity is ordinarily sufficient to avoid summary judgment. *Brungart*, 231 F.3d at 799 ("The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.").

Here, Plaintiff was terminated on February 17, 2021. D's 56.1 ¶ 43. Plaintiff argues that "the discriminatory conduct and subsequent complaints by Plaintiff to Cordeiro and Pelkey were not limited to a single instance in August 2020, but rather were continuing in nature over the months leading to his termination." Resp. at 11. He adds that the "overwhelming majority of the discriminatory conduct and his subsequent complaints occurred after he was rehired in the Spring of 2020." *Id*. Yet, Plaintiff provides no evidence of the dates that he engaged in any protected activity. *Id*. Plaintiff's bare assertion that he made complaints during "the months leading to his

termination" is insufficient to demonstrate temporal proximity.[3] *See Wallace v. Ga. Dept. of Transp.*, 212 Fed. Appx. 799, 802 (11th Cir. 2006) (holding that "[i]n absence of additional evidence showing causation, [a] seven-month disparity is insufficient to show the requisite causal connection needed to establish a prima facie case of retaliation").

The Court agrees with Defendant that there is no evidence of a temporal connection between any alleged protected activity and Plaintiff's termination that would create an inference of causation, or any other evidence sufficient to demonstrate that Plaintiff's engagement in a protected activity caused his termination. No rational trier of fact could find for Plaintiff based solely on Plaintiff's bare allegations.

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

### V. CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (ECF No. 20) is GRANTED. The Clerk of Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this __19th__ day of July, 2023.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

---

[3] While Plaintiff does not make the argument in his Response, Plaintiff alleges in his Deposition that he was terminated in retaliation for a complaint that he had filed about a racial slur by the Assistant General Manager, John Jones, when he worked at Audi in 2016. Beattie Dep. pp. 142–43. Yet again, Plaintiff points to no evidence suggesting that his termination was in retaliation for a complaint he made five years prior, and the Court gives this conclusory allegation no credence.